# United States Court of Appeals

Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**John Ley**
Clerk of the Court

For rules and forms visit
www.ca11.uscourts.gov

March 23, 2011

Steven M. Larimore
Clerk, U.S. District Court
400 N MIAMI AVE RM 8N09
MIAMI FL 33128-1813



FILED by _____ D.C.

MAR 29 2011

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. -- MIAMI

**Appeal Number: 08-17058-AA**
Case Style: USA v. Nicholas Bachynsky
District Court Number:  04-20250 CR-AJ

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

Also enclosed are the following:
 Original Exhibits, consisting of: three boxes, one folder, one envelope.
 Original record on appeal or review, consisting of: forty-four volumes.

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

John Ley, Clerk of Court

Reply To: James O. Delaney (404) 335-6113

Encl.

# United States Court of Appeals
## For the Eleventh Circuit

| No. 08-17058 | FILED<br>U.S. COURT OF APPEALS<br>ELEVENTH CIRCUIT |
|---|---|
| District Court Docket No.<br>04-20250-CR-AJ | Feb 18, 2011<br>JOHN LEY<br>CLERK |

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

versus

NICHOLAS BACHYNSKY,
a.k.a. Reporter Doe,
a.k.a. Nick,

        Defendant-Appellant.

A True Copy / Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
    Deputy Clerk
  Atlanta, Georgia

-------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Florida
-------------------------------------------------------------

### JUDGMENT

    It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
MAR 2 3 2011
U.S. COURT OF APPEALS
ATLANTA GA

Entered:    February 18, 2011
For the Court:    John Ley, Clerk
By:    Gilman, Nancy

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-17058

_____

```
FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 18, 2011
JOHN LEY
CLERK
```

D.C. Docket No. 04-20250-CR-AJ

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

NICHOLAS BACHYNSKY,
a.k.a. Reporter Doe,
a.k.a. Nick,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 18, 2011)

Before EDMONDSON, PRYOR and BARKSDALE,[*] Circuit Judges.

PER CURIAM:

_____

[*] Honorable Rhesa Hawkins Barksdale, United States Circuit Judge for the Fifth Circuit, sitting by designation.

Nicholas Bachynsky appeals his convictions for:  conspiracy to commit securities fraud; and securities and wire fraud.  He claims:  insufficient evidence for the conspiracy conviction; evidentiary errors, including disclosure of his prior criminal convictions; and error in refusing his proposed jury instructions. **AFFIRMED.**

I.

Following convictions in 1989 for racketeering and defrauding the IRS, Bachynsky lost his medical license in Florida, New York, and Texas.  This appeal concerns his involvement in a subsequent fraudulent business scheme.

In 2001, Bachynsky arranged with Richard Anders to establish Helvetia Pharmaceuticals, which was purportedly intended to study, develop, and obtain government approval for an experimental treatment called intracellular hyperthermia (ICHT). The company's ICHT therapy and its founders had a very suspect history: ICHT used the drug 2-4 dinitropehanal (DNP), a toxic substance banned for medical use by the FDA; Anders had felony convictions and was permanently barred by the Securities and Exchange Commission from trading securities or raising investment capital; and, as noted, Bachynsky, in addition to having lost his medical license in

2

three States, had convictions in 1989 for racketeering and conspiracy to defraud the IRS, for which he was imprisoned.

Before starting Helvetia, Bachynsky had experimented with DNP for the better part of his medical career. His experiments showed DNP *not* to be a successful treatment drug: in all of his research, only two patients' lives were prolonged and no one was cured. Worse, four patients died during his DNP research in Mexico during the late 1990s.

Nevertheless, in approximately 2000, Anders and Bachynsky began business planning using ICHT technology for cancer treatments, even though neither owned the rights to the patent application. To further this plan, Bachynsky and Anders enlisted Mahaffey, experienced in business-plan drafting, to develop a plan for a company that would market ICHT therapy. Mahaffey warned Bachynsky: because of his criminal history, he could launch, but could not manage, the company.

Operating under the name Helvetia, Bachynsky and Anders distributed versions of the business plan to potential investors, even though it contained false and misleading information and material omissions: among other things, Bachynsky represented falsely that Helvetia owned the exclusive rights to ICHT; he also did not disclose his 1989 convictions and loss of medical license.

3

In 2001, Bachynsky and Anders set up corporate operations for Helvetia in Florida. There, they conferred with Friedman, an attorney who expressed concerns about their prior convictions. He informed them: they could not serve as corporate officers, directors, or control persons; they could own no more than five percent of the outstanding shares of stock; and they could not involve themselves in raising capital for the company.

Anders and Bachynsky had Helvetia incorporated in 2001 as a Delaware corporation, authorized to do business in Florida. Later that year, Bachynsky left for Europe to operate Helvetia's clinics. There, he formed two Swiss companies to support Helvetia's operations. Bachynsky also made return trips to Florida to solicit, and receive payments from, investors. Bachynsky played an important role in this respect, because Anders would call upon him to provide technical information to potential investors and instill investor confidence through his status as a physician. During these solicitations, Bachynsky knowingly distributed fraudulent business plans to investors, and provided fraudulent information about both the results of his experimental studies with ICHT in Mexico and the status of his medical license.

In 2002, federal investigators received information from Helvetia investors regarding misrepresentations about its operations. Bachynsky, Anders, Laurence Dean, and Arthur Scheinert were indicted in 2004. Dean and Scheinert pleaded guilty

that September to: one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371; and one count of mail fraud, in violation of 18 U.S.C. § 1341. Following a third superseding indictment in 2007 against Anders and Bachynsky, Anders pleaded guilty in January 2008 to one count of securities fraud, in violation of 15 U.S.C. §§ 78(b), 78ff(a), and 18 U.S.C. § 2.

Pursuant to that indictment, Bachynsky was charged with: one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371; seven counts of mail fraud, in violation of 18 U.S.C. §§ 1341, 2; five counts of wire fraud, in violation of 18 U.S.C. §§ 1343, 2; 13 counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff(a), and 18 U.S.C. § 2; and 11 counts of money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 2. The Government dismissed the money-laundering counts prior to trial.

Following a jury trial, Bachynsky was convicted on five counts (conspiracy to commit securities fraud; three for wire fraud; and securities fraud). The jury acquitted him on 13 counts; all others were dismissed at the close of the Government's case in chief. Bachynsky was sentenced, *inter alia*, to 168 months' imprisonment.

II.

Challenged on appeal are the district court's: denying defendant's motion for judgment of acquittal for the conspiracy charge (the securities and wire-fraud

5

convictions are not so challenged); not applying SEC Regulation S-K's standards for material disclosures; not conducting a pre-trial *Daubert* hearing; allowing testimony by a Special Assistant United States Attorney; ruling the Government did not violate Rule 16 in failing to disclose defendant's pre-trial statements; and not instructing the jury on ambiguities in securities law and an entrapment-by-estoppel defense.

In addition to claiming reversible error on each issue, defendant claims cumulative reversible error. Because there is no error for any of the above-described issues, there can be no cumulative error. *See, e.g.*, *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005) (noting cumulative error requires an accumulation of non-reversible errors by trial court).

A.

Bachynsky claims the district court erred in denying his motion for judgment of acquittal due to insufficient evidence for his conspiracy conviction. As noted, he does not similarly contest his securities and wire-fraud convictions.

In order to preserve an insufficient-evidence claim: after the Government rests its case, and before submission of the case to the jury, including after any rebuttal evidence by the Government, defendant must move for judgment of acquittal on that claim. *See* FED. R. CRIM. P. 29(a); *see United States v. Edwards*, 526 F.3d 747, 754-56 (11th Cir. 2008). Because defendant did so, his insufficient-evidence claim is

6

reviewed *de novo*, viewing the evidence in the light most favorable to the Government, and determining whether a rational juror could have found defendant guilty beyond a reasonable doubt. *United States v. Gari*, 572 F.3d 1352, 1359 (11th Cir. 2009). "The jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial, and the court must accept all reasonable inferences and credibility determinations made by the jury." *United States v. Sellers*, 871 F.2d 1019, 1021 (11th Cir. 1989) (citations omitted).

The elements for proving a conspiracy under 18 U.S.C. § 371 are: (1) an agreement between two or more persons to achieve an unlawful objective; (2) knowing and voluntary participation in the agreement; and (3) an overt act by a conspirator in furtherance of the agreement. *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003). There was ample evidence upon which a rational juror could have found defendant conspired with Anders (and others) to defraud investors through false and misleading statements about Helvetia. The record is replete with investors being induced to invest in Helvetia as the result of Bachynsky's role in the conspiracy.

In that regard, Bachynsky's relations with investor Daley are sufficient alone to prove his conviction: Bachynsky represented he was a doctor and medical director for Helvetia; in a meeting with Daley, Anders and Bachynsky falsely represented to

7

him that drug trials in Mexico with the cancer drug had been successful; Bachynsky gave Daley a copy of Helvetia's business plan which included misrepresentations concerning the success of ICHT and DNP and Helvetia's exclusive control of the accompanying technology; Bachynsky did not reveal Anders had been convicted of securities fraud and barred from selling securities; and defendant similarly did not disclose his 1989 convictions and loss of medical license. Bachynsky knew none of this information was correct and succeeded in procuring $10,000 from Daley. Daley testified he would not have invested in Helvetia had he known of Bachynsky's 1989 convictions and loss of medical license, Anders' fraud conviction, and the lack of studies showing DNP and ICHT to be safe or effective.

In short, there was sufficient evidence for a rational juror to find, beyond a reasonable doubt, that Bachynsky knowingly entered into an agreement with Anders to make false material representations and omissions in order to solicit money from would-be investors. That Bachynsky was guilty of conspiracy was a reasonable finding based upon the evidence. That, according to Bachynsky, he was somehow duped by Anders, or misled by his attorney, or left in the dark concerning Helvetia's corporate records and business plans is to no avail. "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt . . . ." *United States v. Bell*, 678 F.2d 547,

549 (5th Cir. Unit B 1982); *see also United States v. Garcia*, 447 F.3d 1327, 1338 (11th Cir. 2006).

### B.

Bachynsky challenges the court's permitting the Government to present evidence concerning his not disclosing his 1989 convictions. Over his objection, the Government was permitted to ask investor witnesses: whether, prior to investing, they knew of the convictions and resulting loss of medical license; and whether they would have invested had those convictions been disclosed.

Defendant contends: there was no duty, general or otherwise, to disclose his 12-year-old convictions; and there is no duty to disclose when the SEC's Regulation S-K only requires disclosure of convictions from the past five years and material to an investor's evaluation of the company. Because defendant had a general duty to disclose those convictions, we do not reach his contention concerning a specific duty to disclose.

Challenges to evidentiary rulings are reviewed for abuse of discretion. *E.g.*, *Baker*, 432 F.3d at 1202. A court abuses its discretion when its decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact". *Id.* "The abuse of discretion standard has been described as allowing a range of choice for the district court, so long as that choice does not

constitute a clear error of judgment." *United States v. Kelly*, 888 F.2d 732, 745 (11th Cir. 1989); *see* FED. R. EVID. 103(a) (no reversible error unless evidentiary ruling affects party's substantial rights).

Bachynsky was convicted for securities fraud, in violation of the Securities Exchange Act, 15 U.S.C. §§ 78j(b), 78ff(a), and 17 C.F.R. § 240.10b-5. The purpose of that Act is to protect investors against fraud; accordingly, an individual or entity making a disclosure in furtherance of the sale of securities has a duty to make those disclosures complete and accurate. *See S.E.C. v. Texas Sulphur Gulf Co.*, 401 F.2d 833, 860-61 (2d Cir. 1968).

Along that line, § 10(b) is the Act's central antifraud provision, with Rule 10b-5 further defining unlawful conduct under that section. To prove a § 10(b) violation, the Government must show "a misstatement or omission of material fact, made with scienter". *S.E.C. v. Fehn*, 97 F.3d 1276, 1289 (9th Cir. 1996) (internal citation and quotation marks omitted).

The duty to disclose "is a general one, and arises whenever a disclosed statement would be 'misleading' in the absence of the 'disclos[ure] of [additional] material facts' needed to make it *not* misleading". *Id.* at 1290 n.12 (emphasis in original). As the Supreme Court has stated, "[c]onduct itself can be deceptive"; therefore, liability under § 10(b) or Rule 10b-5 does *not* require "a specific oral or

10

written statement". *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 158 (2008).

A fact is material if there is a substantial likelihood a reasonable investor would consider it important in making an investment decision. *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988). Accordingly, "materiality depends on the significance the reasonable investor would place on the withheld or misrepresented information". *Id.* at 240.

1.

To solicit new investors, Bachynsky held himself out as both a legitimate businessman and a licensed and qualified medical expert. Disclosure that he had prior convictions and had lost his medical license, not to mention his failure to disclose knowledge of Anders' prior securities-fraud prohibitions, were all material facts that, needless to say, "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available". *Id.* at 231-32.

Therefore, such failure to disclose affected Helvetia's potential investors. Accordingly, the district court did *not* abuse its discretion in admitting evidence concerning Bachynsky's omissions in that regard. *See also Breard v. Sachnoff & Weaver, Ltd.*, 941 F.2d 142, 144 (2d Cir. 1991) (failure to disclose prior fraud

11

conviction in initial offering memorandum could be considered reckless as a matter of law); *cf. S.E.C. v. Merch. Capital, LLC*, 483 F.3d 747, 771-72 (11th Cir. 2007) (noting clear error for court not to consider prior convictions or violations of court orders).

2.

Nevertheless, defendant contends he was not required to disclose his 1989 convictions because, as noted, Regulation S-K requires disclosure of a prior conviction only when it is within five years and material to an investment decision. 17 C.F.R. § 229.401(f)(2), (g)(1). Defendant contends Regulation S-K is relevant because it is promulgated by the SEC, which has authority over the enforcement of federal securities laws, *see United States v. Matthews*, 787 F.2d 38, 44 (2d Cir. 1986); and, according to the Third Circuit, disclosure obligations under Regulation S-K "extend considerably beyond those required by Rule10b-5". *Oran v. Stafford*, 226 F.3d 275, 288 (3d Cir. 2000).

Defendant's reliance upon Regulation S-K is misplaced and ignores that its application is predicated upon an SEC filing. The regulation contains the disclosure requirements for the nonfinancial statement portion of filings with the SEC: it governs registration statements, annual reports, and "any other documents required to be filed under the Exchange Act, to the extent provided in the forms and rules under that Act". 17 C.F.R. § 229.10(a)(2); *see also Slayton v. American Exp. Co.*, 604 F.3d 758, 768 (2d Cir. 2010). Bachynsky fails to show Regulation S-K should apply in a context outside of SEC filings, to a point in time such as this, *i.e.*,

Bachynsky's material misrepresentations at the time of solicitation.

## C.

Defendant next challenges the denial of his motion for a pre-trial *Daubert* hearing (based upon *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702 (requiring court to consider whether expert testimony is scientifically or technically valid and will assist trier of fact)). Defendant contends the hearing would have prevented the admission of irrelevant and prejudicial testimony by one of the Government's expert witnesses, Dr. Sokol. The denial of a *Daubert* hearing is reviewed for abuse of discretion, *United States v. Hansen*, 262 F.3d 1217, 1233 (11th Cir. 2001), as are rulings on the admissibility of expert testimony, *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

## 1.

Bachynsky's pre-trial *Daubert* motion, on whether the reasoning or methodology underlying Dr. Sokol's testimony was reliable, was denied without prejudice. At trial, defendant objected to the relevance of Dr. Sokol's testimony, contending he lacked expertise with DNP. The court considered the objection, but qualified Dr. Sokol as an expert in the fields of oncology and clinical pharmacology.

14

There is no requirement that a *Daubert* hearing always be held. *See United States v. Frazier*, 387 F.3d 1244, 1264 (11th Cir. 2004); *Hansen*, 262 F.3d at 1234. As is well known, the trial court's obligation under Federal Rule of Evidence 702 is to serve as the gatekeeper for the admission of scientific expert testimony. In qualifying an expert witness, the court must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)); *see* FED. R. EVID. 702. In short, the court is to "ensure that speculative, unreliable expert testimony does not reach the jury". *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). In that regard, it is understandably given "considerable leeway" in evaluating the testimony's reliability. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

There was no abuse of discretion. First, a *Daubert* hearing was not required because the Government proffered sufficient information to allow the court to qualify Dr. Sokol as an expert in areas of oncology and clinical pharmacology, and because

15

defendant presented no evidence contesting Dr. Sokol's testimony or scientific knowledge. *See Hansen*, 262 F.3d at 1234 (a court should conduct a *Daubert* inquiry when the opposing party presents conflicting expert testimony). Second, Bachynsky objected to the relevance of Dr. Sokol's testimony because he lacked personal experience with DNP. The district court considered this objection and determined the testimony was relevant because it assisted the jury in evaluating the truthfulness and accuracy of Bachynsky's and Helvetia's human-safety claims. *See Daubert*, 509 U.S. at 591-92 (noting a liberal standard for relevance to whether expert testimony will aid jury in resolving the facts).

2.

Bachynsky further contends the *Daubert* hearing was necessary because it would have prevented Dr. Sokol's testifying erroneously that Bachynsky admitted to a felony in 1986. Pursuant to defendant's objection, the court struck that testimony and instructed the jury to disregard it.

> An instruction to disregard evidence withdrawn from the jury is sufficient grounds for an appellate court to uphold a trial court's denial of a motion for mistrial unless the evidence is so highly prejudicial as to be incurable by the trial court's admonition. Such a level of prejudicial effect exists where there is a significant possibility . . . that . . . the stricken statement had a substantial impact upon the verdict of the jury.

16

*United States v. Sawyer*, 799 F.2d 1494, 1505-06 (11th Cir. 1986) (quoting *United States v. Tenorio-Angel*, 756 F.2d 1505, 1512 (11th Cir. 1985) (internal quotation marks omitted)).

There is no indication of any "significant possibility" of highly prejudicial evidence. Again, pursuant to defendant's objection, the district court immediately struck the testimony and instructed the jury to disregard it; and the court denied defendant's motion for a mistrial, pursuant to the jury's having previously received evidence on Bachynsky's 1989 convictions and medical license revocations.

Defendant asserts the jury's being told erroneously about a 1986 felony, in addition to hearing about his 1989 convictions, was more prejudicial than evidence on the 1989 convictions alone. The record indicates, however, that the testimony was *not* prejudicial: the court gave a limiting instruction, *see United States v. Trujillo*, 146 F.3d 838, 844 (11th Cir. 1998) (court's curative instruction to jury assuaged potential prejudice caused by improper testimony); and defendant was acquitted on most counts, *see United States v. Mills*, 138 F.3d 928, 936 (11th Cir. 1998) (not-guilty verdict on most counts indicates jury's consideration was not tainted by improperly admitted evidence).

D.

17

Defendant asserts the court erred by permitting Special Assistant United States Attorney Sindler-Fuchs (SAUSA) to testify about the following statement made by FBI Special Agent Andjich to defendant.  In April 2001, Bachynsky contacted that Agent to arrange for a voluntary interview concerning an unrelated fraud investigation involving Kunen.  Bachynsky was neither a target nor a suspect in that investigation; however, his girlfriend was an investor in Kunen.

At the meeting with Agent Andjich, the SAUSA, and an AUSA, Bachynsky disclosed that he and Anders were working on an effort to market DNP as a cancer-therapy drug.  He informed them he was helping to create the Helvetia company and had enlisted the help of an attorney to assist him in selling shares to investors.  According to the SAUSA's challenged testimony, Agent Andjich replied: "Doc . . . . Why would you do this?  Why would you want to do this?  You're only going to end up in prison . . . again."

Defendant claims:  that testimony was inadmissible hearsay; and it was impermissibly prejudicial.  Defendant further contends the court erred by failing to give a limiting instruction concerning the nature of the statement; and, as a result, jurors were left unaware Agent Andjich's statement was admitted only for purpose of notice and *not* for the truth of the matter stated.

1.

The district court did not abuse its discretion in admitting the SAUSA's testimony about the Agent's statement. *See, e.g., United States v. Brown*, 441 F.3d 1330, 1359 (11th Cir. 2006) ("We review a district court's hearsay ruling for abuse of discretion."). The hearsay bar does not pertain to statements used to show future effect upon the listener; and, as the district court correctly noted, the SAUSA's testimony was presented to show Bachynsky was on notice regarding the legal ramifications of his decision to work with Anders in forming Helvetia. *See United States v. Hawkins*, 905 F.2d 1489, 1495 (11th Cir. 1990).

2.

As for defendant's challenge to the lack of a limiting instruction, Federal Rule of Evidence 105 states: "When evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, *upon request*, shall restrict the evidence to its proper scope and instruct the jury accordingly." FED. R. EVID. 105 (emphasis added). Because defendant did not make that request, review is only for plain error. *United States v. Miranda*, 197 F.3d 1357, 1360 n.4 (11th Cir. 1999) ("Since the court had no duty to give a limiting instruction in the absence of a request, we may reverse only if we conclude that the court's failure to give the instruction constituted plain error.") Defendant cites ambiguity from the district court's statement ("I'll be happy to give that limiting instruction again."), made

19

outside the presence of the jury, as justification for not renewing a request for a limiting instruction. Ambiguity, however, is irrelevant; rather, the question is whether Bachynsky could have renewed his request for the instruction. *See id.* at 1360 n.3. Bachynsky could have, but did not, do so.

Moreover, even assuming the district court erred, any error did not, for plain-error review purposes, affect Bachynsky's substantial rights. "[I]t has generally been held that failure to give [limiting instructions] amounts to plain error where . . . the government's case is weak and the statement is extremely damaging." *United States v. Sisto*, 534 F.2d 616, 624 (5th Cir. 1976) (quoting *United States v. Lipscomb*, 425 F.2d 226, 227 (6th Cir. 1970)). Unlike in *Sisto,* the SAUSA's testimony was not the only evidence before the jury for deciding whether Bachynsky's conduct was intentional.

### E.

Defendant maintains the court erroneously denied his mistrial motion, made outside the presence of the jury, based on the Government's not disclosing, prior to trial, the following comments Bachynsky made during the above-described April 2001 meeting with the SAUSA, among others. The comments at issue are Bachynsky's questioning Agent Andjich, the SAUSA, and the AUSA about his new business scheme: "Well, what do you think? Should I do this?"

Defendant demands a new trial because of the impact his comments might have had upon his trial strategy. Federal Rule of Criminal Procedure 16(a)(1)(A) provides:

> Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, *in response to interrogation* by a person the defendant knew was a government agent if the government intends to use the statement at trial.

FED. R. CRIM. P. 16(a)(1)(A) (emphasis added).

The court ruled Rule 16 was never triggered, based on finding Bachynsky's statement was not the result of an interrogation. As a precautionary measure, however, the court did not permit testimony regarding Bachynsky's above-quoted questions at the April 2001 meeting.

Denial of a motion for a mistrial is reviewed for abuse of discretion. *United States v. Abraham*, 386 F.3d 1033, 1036-37 (11th Cir. 2004); *see also United States v. Perez-Oliveros*, 479 F.3d 779, 782 (11th Cir. 2007) (reviewing the appeal of alleged Government violations of Rule 16). The Government's failure to disclose statements by defendant requires a mistrial when the "defense strategy may have been determined by the failure to [disclose] . . . ." *United States v. Noe*, 821 F.2d 604, 607 (11th Cir. 1987) (internal citation and quotation marks omitted). There was no abuse of discretion.

21

First, there is no indication that Bachynsky's statement was made as part of a Government interrogation. Uncontested is the fact that Bachynsky approached the Government. Even though the meeting was held at the United States Attorney's office, "[t]he term 'interrogation' does not include instances, such as this, in which the defendant initiated the conversation". *United States v. Otero*, No. 90-1839, 1990 WL 157043, at *1 (7th Cir. 18 Oct. 1990).

Second, the verbal exchange never rose to the level of an interrogation: words or actions initiated by law enforcement officials "reasonably likely to elicit an incriminating response from the suspect". *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990). Even in a custodial setting (which this was not), "absent words or actions designed to elicit an incriminating response from a defendant, any statements made by the defendant are considered voluntary". *Otero*, 1990 WL 157043, at *1 (citing *Muniz*, 496 U.S. at 603-04). Defendant has failed to show any form of interrogation during this April exchange. Instead, he only presents questions posed by him to the Government.

## F.

Last, defendant contends the district court erred by refusing his requested instructions on: ambiguities in securities law, concerning disclosure provisions related to criminal backgrounds; and an entrapment-by-estoppel defense. While a

district court's refusal to give a requested instruction is reviewed for abuse of discretion, we review *de novo* whether the evidence sufficiently supports a proposed theory-of-the-defense instruction. *United States v. Richardson*, 532 F.3d 1279, 1289-90 (11th Cir. 2008).

1.

The contention regarding the claimed ambiguity in the law is based upon defendant's view of disclosure requirements and the above-discussed SEC Regulation S-K. *See generally United States v. Heller*, 830 F.2d 150, 154-56 (11th Cir. 1987) ("[W]hen the law is vague or highly debatable, a defendant—actually or imputedly—lacks the requisite intent to violate it."). Defendant contends: an ambiguity in the law touches upon intent to violate the law; and, here, the instructions were inadequate because they did not address the matter of ambiguity—rather, they only provided general provisions of good faith, mistake of fact, and advice of counsel.

There was no reversible error. Defendant is entitled to an instruction "relating to a theory of the defense for which there is *any foundation* in the evidence . . . ." *United States v. Palma*, 511 F.3d 1311, 1315 (11th Cir. 2008) (emphasis in original). Defendant, however, fails to support his claim. *See United States v. Billue*, 994 F.2d 1562, 1568 (11th Cir. 1993) ("The trial court has authority to refuse to instruct the jury on a defense where the evidence used to support it, if believed, fails to establish a legally cognizable defense.").

As the district court properly noted, "there's no factual basis in the record . . . for the jury to possibly find that there was good-faith reliance on any ambiguity in

24

these regulations, or a contradiction between what they purportedly say and what [defendant's attorney]'s advice was on their effect". And, contrary to defendant's assertion, there is no imputed lack of intent to violate these regulations because, as discussed *supra*, Regulation S-K does *not* govern the material statements made by defendant to Helvetia investors. Moreover, defendant points to no conflicting expert testimony or conflicting judicial opinions indicating legal uncertainty concerning disclosure requirements and the securities fraud laws under which he was charged. *See, e.g., Heller*, 830 F.2d at 154-55 (defendant entitled to legal uncertainty theory after showing conflicting expert testimony and lack of applicable IRS statements).

2.

Concerning not instructing on entrapment-by-estoppel, defendant relies upon a May 2001 meeting between *Anders* and federal agents, where *Anders* admitted to certain wrongdoing concerning unrelated funds invested under the above-referenced Kunen fraudulent-investment scheme. The meeting was conducted under a direct-use immunity agreement between Anders and the Government as part of its investigation of Kunen.

At that meeting, Anders admitted to investigators he had lied to Bachynsky for months concerning funds for that investment. Anders further disclosed to Agent Andjich, the AUSA, and the SAUSA that he was actively selling investment

25

opportunities with Helvetia, and recounted to them the financial worth of his investments to date.

Before leaving, and after hearing all Anders was doing with respect to Helvetia and Kunen, the Agent said: "Just keep doing what you're doing". Following that meeting, Anders apparently repeated this information to Bachynsky and informed him (and later co-defendant Dean) that the FBI said "everything was okay" for Anders and Bachynsky to continue their Helvetia work.

As noted, whether there is sufficient evidence to constitute a triable issue of entrapment by estoppel is a question of law, *see United States v. Collazo*, 885 F.2d 813, 814 (11th Cir. 1989), with the evidence being viewed in the light most favorable to defendant, *see United States v. Williams*, 728 F.2d 1402, 1404 (11th Cir. 1984). Along that line, to justify an entrapment-by-estoppel defense, defendant "must actually rely on a point of law misrepresented by an official of the state; and such reliance must be objectively reasonable . . . ." *United States v. Eaton*, 179 F.3d 1328, 1332 (11th Cir. 1999). Not only does an entrapment-by-estoppel defense require a full disclosure by the party seeking to rely on official advice, *see United States v. Tallmadge*, 829 F.2d 767, 774 (9th Cir. 1987); but, in order to rely upon a point of law misrepresented by a government official, the statement must come from the official directly and not through an intermediary, *see Eaton*, 179 F.3d at 1332 ("For

a statement to trigger an entrapment-by-estoppel defense, it must be made directly to the defendant, not to others.").

Obviously, the record lacks support for an entrapment-by-estoppel defense. First, Bachynsky did *not* show that he fully disclosed relevant information to a Government official. And, even if he did, he failed to show information came directly from a Government official; instead, it came from an intermediary—Anders.

III.

For the foregoing reasons, the judgment is **AFFIRMED**.

A True Copy / Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

by

Deputy Clerk
Atlanta, Georgia